**FILED**

United States District Cou
Albuquerque, New Mexic

Mitchell R. Elfers
Clerk of Court

AO 106A  (08/18)  Application for a Warrant by Telephone or Other Reliable Electronic Means

# UNITED STATES DISTRICT COURT

for the

District of New Mexico  ▾

| | |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched<br>or identify the person by name and address)*<br>INFORMATION ASSOCIATED WITH INSTAGRAM<br>ACCOUNT " dazed_ghxst"  THAT IS STORED AT<br>PREMISES CONTROLLED BY META PLATFORMS,<br>INC. | )<br>)<br>)<br>)<br>)<br>)<br>) |

Case No.  **23mr1827**

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A

located in the _____ District of _____ **New Mexico** _____ , there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

- ☑ evidence of a crime;
- ☐ contraband, fruits of crime, or other items illegally possessed;
- ☑ property designed for use, intended for use, or used in committing a crime;
- ☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. § 1153 | Offenses committed in Indian Country |
| 18 U.S.C. § 1111 | First Degree Murder |

The application is based on these facts:

See attached affidavit, incorporated herein by reference.

- ☑ Continued on the attached sheet.
- ☐ Delayed notice of _____ days *(give exact ending date if more than 30 days:* _____ *)* is requested under
  18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Applicant's signature*

Lorraine Hardy, Special Agent

*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by
Telephonically Sworn and Electronically Signed  *(specify reliable electronic means)*

Date:  9/20/2023 @ 2:20pm

*Judge's signature*

City and state:  Farmington, New Mexico

B. Paul Briones, United States Magistrate Judge

*Printed name and title*

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF INFORMATION ASSOCIATED WITH INSTAGRAM ACCOUNT "dazed_ghxst" THAT IS STORED AT PREMISES CONTROLLED BY META PLATFORMS, INC. | Case No. _____ |

**AFFIDAVIT IN SUPPORT OF**
**AN APPLICATION FOR A SEARCH WARRANT**

I, Lorraine Hardy, being first duly sworn, hereby depose and state as follows:

**INTRODUCTION AND AGENT BACKGROUND**

1.      I make this affidavit in support of an application for a search warrant for information associated with a certain Instagram account that is stored at premises owned, maintained, controlled, or operated by Meta Platforms, Inc. ("Meta"), an electronic communications service and/or remote computing service provider headquartered in Menlo Park, California.  The information to be searched is described in the following paragraphs and in Attachment A.  This affidavit is made in support of an application for a search warrant under 18 U.S.C. §§ 2703(a), 2703(b)(1)(A) and 2703(c)(1)(A) to require Meta to disclose to the government copies of the information (including the content of communications) further described in Section I of Attachment B.  Upon receipt of the information described in Section I of Attachment B, government-authorized persons will review that information to locate the items described in Section II of Attachment B.

2.      I am currently serving as an FBI Special Agent assigned to the FBI, Albuquerque Division, Farmington Resident Agency, where I primarily investigate crimes that occur in Indian Country to include homicide, aggravated assault, child sexual assault, kidnapping and rape. I have

been with the FBI for approximately 4 years. I have received on the job training from other experienced agents, detectives, Indian Country criminal investigators, and tribal police officers. My investigative training and experience includes, but is not limited to, processing crime scenes, conducting surveillance, interviewing subjects, targets, and witnesses, writing affidavits for and executing search and arrest warrants, examining cellular telephones, managing confidential human sources and cooperating witnesses/defendants, serving subpoenas, collecting and reviewing evidence, and analyzing public records.

3.      The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other agents and witnesses. This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

4.      Based on my training and experience and the facts as set forth in this affidavit, there is probable cause to believe that violations of Title 18 U.S.C. § 1153 offenses committed in Indian Country; and Title 18 U.S.C. § 1111-First Degree Murder, have been committed by Justen Puerto, Travis Begaye Jr., and other person(s) known and unknown. There is also probable cause to search the information described in Attachment A for Instagram account "dazed_ghxst" for evidence of these crimes as further described in Attachment B.

## JURISDICTION

5.      This Court has jurisdiction to issue the requested warrant because it is "a court of competent jurisdiction" as defined by 18 U.S.C. § 2711. 18 U.S.C. §§ 2703(a), (b)(1)(A), and (c)(1)(A). Specifically, the Court is "a district court of the United States . . . that has jurisdiction over the offense being investigated." 18 U.S.C. § § 1153 and 1111, first degree murder in Indian County.

**PROBABLE CAUSE**

6.      On August 7, 2023, at approximately 6:00 p.m., the Jicarilla Apache Police Department (JAPD) responded to a report of a shooting on East Side Street in Dulce, New Mexico, which is located within the Jicarilla Apache Reservation. I am informed by a JAPDCI, that he responded to the location and found the deceased body of the victim (hereinafter referred to as JOHN DOE), year of birth 2007, lying in the street with seven spent .40 caliber shell casings around JOHN DOE's body. Upon further examination, the JAPD CI observed multiple entry and exit wounds on JOHN DOE's body that appeared to be bullet holes. Based on his training and experience, the JAPDCI believed JOHN DOE was murdered by gunfire and treated the incident as a homicide.

7.      Through a joint investigation by JAPD and the FBI, I learned that JOHN DOE's family members and other residents of Dulce believed an individual named Justin Puerto (hereinafter referred to as PUERTO), year of birth 2008, was responsible for the possible murder of JOHN DOE. At approximately 11:00 p.m., JAPD received a tip that PUERTO was presently at 16 Onate Street in Dulce, the residence of his girlfriend (hereinafter referred to as H.L.), year of birth 2007, and H.L.'s mother (hereinafter referred to as M.L.) year of birth 1982. Shortly thereafter, JAPD and the FBI went to 16 Onate Street and JAPD apprehended PUERTO.

8.      Based on PUERTO's date of birth, I believed he was approximately 15 years old. PUERTO said he lived with his grandmother (hereinafter referred to as L.W.), year of birth 1957. L.W. stated she is PUERTO's legal guardian. On August 8, 2023, at approximately 12:03 a.m., PUERTO was provided his Miranda Warnings in the presence of L.W. He stated that he understood his rights and agreed to speak with law enforcement. PUERTO stated that he was friends with JOHN DOE and that he heard from multiple sources that JOHN DOE had been

3

killed on the evening of August 7, 2023. PUERTO stated that prior to the murder he was with his

older brother Travis Begaye Jr. (hereinafter referred to as BEGAYE), year of birth 2004, hiking

on the reservation. After finishing the hike, PUERTO and BEGAYE were walking back and

heard nearby gunshots. PUERTO and BEGAYE ran away from the sound of gunshots and went

to a family member's house. Eventually, PUERTO and BEGAYE later managed to get back to

L.W.'s house. On August 7, 2023, at approximately 7:30 p.m., PUERTO called his girlfriend,

H.L. and arranged to have her mother, M.L. pick PUERTO up from his residence and take him to

her residence at 16 Onate Street. PUERTO stated that he did not have a firearm and was not of

age to purchase one. PUERTO stated he did not know who shot JOHN DOE. PUERTO provided

his cellular telephone number as (575) 419-0643.

       9.      On August 8, 2023, at approximately 12:45 a.m., FBI spoke with BEGAYE in the

vicinity of 16 Onate Street. BEGAYE's date of birth is December 15, 2004, meaning he was 18

years old at the time of the interview. During our conversation, BEGAYE stated that he heard

JOHN DOE was dead and BEGAYE knew that JOHN DOE and PUERTO were close friends.

BEGAYE said he tried to see and speak with PUERTO early in the day on August 7, 2023, but

PUERTO's vibe seemed off. BEGAYE informed us that he did not see PUERTO on August 7,

2023, and that he did not go on a hike with PUERTO. BEGAYE further stated that on August 7,

2023, he received three Instagram voice calls from PUERTO around the time that PUERTO said

they were on a hike together. BEGAYE provided PUERTO's Instagram handle as

"Smokedoutkyd". BEGAYE does not currently have a telephone, but PUERTO was able to

contact BEGAYE through BEGAYE's girlfriend's cellular telephone. During the first call,

PUERTO told BEGAYE in sum and substance that he had a plan to make some money. During

the second call, PUERTO told BEGAYE in sum and substance that PUERTO successfully made

4

money that afternoon. During the third call, PUERTO called BEGAYE and PUERTO said he had "fucked up." BEGAYE stated that PUERTO sounded like he was crying during the phone call and was questioning whether what happened was worth the money he made. BEGAYE believed that PUERTO was in some way involved in the murder of JOHN DOE.

10.     On August 8, 2023, after speaking with H.L., FBI requested the PUERTO cellular telephone for evidentiary purposes. PUERTO stated his cellular telephone was lost approximately a week before. PUERTO stated he now uses Instagram to voice call people, or he used H.L.'s cellular telephone. PUERTO then opened H.L.'s cellular telephone and showed the recent call history to FBI. There appeared to be calls between H.L. and PUERTO's contact, which was saved as "Justen" with a blue heart symbol, as recently as August 7, 2023. H.L. and M.L. consented to the FBI taking custody of H.L.'s cellphone telephone and examining the contents of the cellular telephone.

11.     On August 8, 2023, JPDCI received an Instagram video from a JPD Officer whose daughter is friends with PUERTO on Instagram. The Instagram video depicted PUERTO near River Road Platform in Dulce, which is less than a mile from the scene of the shooting, firing a black handgun into the air. The Instagram video was posted on the day of the shooting from H.L.'s Instagram handle (the handle is known to your affiant but is withheld because it reveals H.L.'s identity). PUERTO was wearing a black hoodie, white jeans or light-colored jeans, black shoes and a black beanie hat in the video. Later, JAPD retrieved three 40-caliber casings in the same area as where the video was filmed. The 40-caliber casings were the same manufacturer as the 40-caliber casings found at the crime scene, all were Federal Ammunition. The casings were collected and entered into evidence for ballistic examinations at a later date.

12.     H.L was interviewed a second time on August 11, 2023, by FBI and it was learned H.L. filmed the Instagram video of PUERTO near River Road Platform shooting the firearm, a week prior to the incident. H.L. utilized her cellular device number to film the video and upload the video to her Instagram account.  H.L. was also aware PUERTO had in his possession a black handgun make and model unknow and Puerto kept the handgun in a dark colored duffle bag. H.L. also disclosed PUERTO came over to her residence the evening after the incident and while in H.L.'s bedroom PUERTO told H.L. he "did it". H.L. believed PUERTO was referring to the shooting incident and death of JOHN DOE which occurred earlier that day.

13.     JOHN DOE's friend (hereinafter referred to as E.L.), year of birth 2006, was interviewed by law enforcement. E.L. stated PUERTO walked up to him during school on the day of the incident and said, "I'm gonna make my mark today". E.L believed that statement meant PUERTO was going to kill someone. After school PUERTO walked up to E.L. and JOHN DOE and arranged to make "a deal" after school. E.L. stated both PUETO and JON DOE sold illegal drugs and the deal PUERTO made with JOHN DOE was for 600 dollars cash and some vapes. E.L. believed PUERTO was acting weird and told JOHN DOE not to do the deal with PUERTO. E.L. believed PUERTO was jealous of JOHN DOE. At approximately 4:30 p.m. E.L and JOHN DOE hung out after school until approximately 4:30 P.M. E.L. left for football practice and JOHN DOE went to go meet PUERTO for their arranged deal. When E.L. arrived home later that night he heard about the shooting incident and immediately believed PUERTO killed OHN DOE. E.L. confirmed JOHN DOE used Instagram to communicate with other classmates including him and PUERTO. E.L. provided JOHN DOE's Instagram handle as

"85.136rs" and PUERTO's Instagram handle as "gfolks". E.L. stated PUERTO had multiple
Instagram accounts and changed them often.

14.     On August 9, 2023, Dulce High School Administration notified JPDCI they were
conducting an internal investigation into multiple statements received by students that PUERTO
had threatened them on Thursday and Friday last week (August 3 and 4, 2023). One student
(hereinafter referred to as D.L.T.), year of birth 2006, stated PUERTO told him "You better
watch your back or this 40 is gonna bite you." PUERTO gestured with his hand and finger
signifying a gun. Later, PUERTO passed D.L.T. in the hallway and said, "you better watch this
forty and quit acting like a bitch and keep walking." Another student (hereinafter referred to as
D.J.T.), year of birth 2007, stated PUERTO approached him at school and pointed a finger in
D.J.T.'s face and said, "tell tour brother he better watch out for that forty." D.L.T. and D.J.T. are
brothers.

15.     Dulce High School Security later discovered video security footage from the day
of the incident, PUERTO was shown walking up to E.L. and JOHN DOE outside of the school.
The video was observed by law enforcement and the three of them appeared to be talking. The
interaction appeared to be amicable and friendly. After a short amount of time PUERTO walked
off.

16.     On August 9, 2023, JPDCI conducted a witness interview of M.T., year of birth
1984. M.T. lives in a house next to the location of the crime scene. M.T. was driving to Chama at
approximately 5:43 PM and saw PUERTO, JOHN DOE, and who she believed to be BEGAYE
standing in the road talking. M.T. worked at the Department of Youth Summer Program and
knew PUERTO and JOHN DOE. M.T.'s boyfriend (hereinafter referred to as P.A.), year of birth
2003, was driving with her and recognized BEGAYE and knew him as PUERTO's brother.

PUERTO was wearing a black hoodie with white graphics and black pants. BEGAYE was also dressed in all black and wore a black covid face mask. Both PUERTO and BEGAYE had stern looks on their faces. JOHN DOE looked at M.T. as she drove by and appeared to be scared. M.T. and P.A. saw the group, including PUERTO and JOHN DOE, just minutes before JAPD received the call of a shooting at that location.

17.    Pursuant to a search warrant served on the Instagram account "Smokedoutkyd" law enforcement identified the "Smokedoutkyd" account to be PUERTO's by the username being "Justen", the phone number associated with the account matching PUERTO's cellular telephone number, photos and videos of PUERTO on the Instagram account and conversations with other Instagram account users.  Law enforcement also identified the Instagram ID, "dazed_ghxst" discussing with PUERTO, via Instagram messages, illegal narcotic possession and distribution as well as PUERTO calling the user of "dazed_ghxst" by the name of "Travis", which is his brother BEGAYE's first name. PUERTO also referred to the user of "dazed_ghxst" as "lil bro".  On August 7, 2023, just hours before the shooting incident, the user of "dazed_ghxst" sent Instagram messages to PUERTO's account including,

- "That's my strap tho gang"

- "Under couch loaded bit ok safety"

- "But on safety".

Based on my training and experience, people who engage in illegal activity will attempt to use slang or code words to disguise their intent, the slang word "strap" is often used to mean a firearm.  The Instagram messages continued between PUERTO and "dazed_ghxst" to include the Instagram User "dazed_ghxst" sending an Instagram message, "I'm going with u dawg" and

other messages coordinating to meet PUERTO at 3:45 at "d hill." "D hill" is known by the locals as a hang out spot for teenagers and is a short distance from the crime scene.

18.    Based on statements made by witnesses and information obtained from law enforcement during the course of this investigation, the Instagram User ID, "dazed_ghxst", may have been used by BEGAYE on or around the date of the crime. Because PUERTO and BEGAYE are brothers and may have communicated to set up their meeting and "deal" on the day of the crime, there may be information pertinent to the investigation in the "dazed_ghxst" account. This belief is reinforced by the fact that a witness reported seeing PUERTO, BEGAYE, and John Doe on the street where Doe was gunned-down only moments before it happened. Thus, I believe the information and media stored electronically in this Instagram account may contain evidence of such crime. This warrant authorizes a review of the electronically stored media and information seized or copied pursuant to this warrant in order to locate evidence, fruits, and instrumentalities of the commission of the crime.

19.    The incident under investigation occurred within the exterior boundaries of the Jicarilla Apache Indian Reservation. PUERTO, BEGAYE, and JOHN DOE are enrolled members of the Jicarilla Apache Tribe.

## BACKGROUND CONCERNING INSTAGRAM[1]

20.    Instagram is a service owned by Meta, a United States company and a provider of an electronic communications service as defined by 18 U.S.C. §§ 3127(1) and 2510.

---

[1] The information in this section is based on information published by Meta on its Instagram website, including, but not limited to, the following webpages: "Privacy Policy," https://privacycenter.instagram.com/policy/; "Information for Law Enforcement," https://help.instagram.com/494561080557017; and "Help Center," https://help.instagram.com.

Specifically, Instagram is a free-access social networking service, accessible through its website and its mobile application, that allows subscribers to acquire and use Instagram accounts, like the target account(s) listed in Attachment A, through which users can share messages, multimedia, and other information with other Instagram users and the general public.

21.     Meta collects basic contact and personal identifying information from users during the Instagram registration process.  This information, which can later be changed by the user, may include the user's full name, birth date, gender, contact e-mail addresses, physical address (including city, state, and zip code), telephone numbers, credit card or bank account number, and other personal identifiers.  Meta keeps records of changes made to this information.

22.     Meta also collects and retains information about how each user accesses and uses Instagram.  This includes information about the Internet Protocol ("IP") addresses used to create and use an account, unique identifiers and other information about devices and web browsers used to access an account, and session times and durations.

23.     Each Instagram account is identified by a unique username chosen by the user. Users can change their usernames whenever they choose but no two users can have the same usernames at the same time.  Instagram users can create multiple accounts and, if "added" to the primary account, can switch between the associated accounts on a device without having to repeatedly log-in and log-out.

24.     Instagram users can also connect their Instagram and Facebook accounts to utilize certain cross-platform features, and multiple Instagram accounts can be connected to a single Facebook account.  Instagram accounts can also be connected to certain third-party websites and mobile apps for similar functionality.  For example, an Instagram user can "tweet" an image uploaded to Instagram to a connected Twitter account or post it to a connected Facebook

10

account, or transfer an image from Instagram to a connected image printing service. Meta maintains records of changed Instagram usernames, associated Instagram accounts, and previous and current connections with accounts on Meta and third-party websites and mobile apps.

25.     Instagram users can "follow" other users to receive updates about their posts and to gain access that might otherwise be restricted by privacy settings (for example, users can choose whether their posts are visible to anyone or only to their followers). Users can also "block" other users from viewing their posts and searching for their account, "mute" users to avoid seeing their posts, and "restrict" users to hide certain activity and prescreen their comments. Instagram also allows users to create a "close friends list" for targeting certain communications and activities to a subset of followers.

26.     Users have several ways to search for friends and associates to follow on Instagram, such as by allowing Meta to access the contact lists on their devices to identify which contacts are Instagram users. Meta retains this contact data unless deleted by the user and periodically syncs with the user's devices to capture changes and additions. Users can similarly allow Meta to search an associated Facebook account for friends who are also Instagram users. Users can also manually search for friends or associates.

27.     Each Instagram user has a profile page where certain content they create and share ("posts") can be viewed either by the general public or only the user's followers, depending on privacy settings. Users can customize their profile by adding their name, a photo, a short biography ("Bio"), and a website address.

28.     One of Instagram's primary features is the ability to create, edit, share, and interact with photos and short videos. Users can upload photos or videos taken with or stored on their devices, to which they can apply filters and other visual effects, add a caption, enter the

11

usernames of other users ("tag"), or add a location.  These appear as posts on the user's profile.
Users can remove posts from their profiles by deleting or archiving them.  Archived posts can be
reposted because, unlike deleted posts, they remain on Meta's servers.

29.     Users can interact with posts by liking them, adding or replying to comments, or
sharing them within or outside of Instagram.  Users receive notification when they are tagged in
a post by its creator or mentioned in a comment (users can "mention" others by adding their
username to a comment followed by "@").  An Instagram post created by one user may appear
on the profiles or feeds of other users depending on a number of factors, including privacy
settings and which users were tagged or mentioned.

30.     An Instagram "story" is similar to a post but can be viewed by other users for only
24 hours.  Stories are automatically saved to the creator's "Stories Archive" and remain on
Meta's servers unless manually deleted.  The usernames of those who viewed a story are visible
to the story's creator until 48 hours after the story was posted.

31.     Instagram allows users to broadcast live video from their profiles.  Viewers can
like and add comments to the video while it is live, but the video and any user interactions are
removed from Instagram upon completion unless the creator chooses to send the video to IGTV,
Instagram's long-form video app.

32.     Instagram Direct, Instagram's messaging service, allows users to send private
messages to select individuals or groups.  These messages may include text, photos, videos,
posts, videos, profiles, and other information.  Participants to a group conversation can name the
group and send invitations to others to join.  Instagram users can send individual or group
messages with "disappearing" photos or videos that can only be viewed by recipients once or
twice, depending on settings.  Senders can't view their disappearing messages after they are sent

but do have access to each message's status, which indicates whether it was delivered, opened, or replayed, and if the recipient took a screenshot. Instagram Direct also enables users to video chat with each other directly or in groups.

33.     Instagram offers services such as Instagram Checkout and Facebook Pay for users to make purchases, donate money, and conduct other financial transactions within the Instagram platform as well as on Facebook and other associated websites and apps. Instagram collects and retains payment information, billing records, and transactional and other information when these services are utilized.

34.     Instagram has a search function which allows users to search for accounts by username, user activity by location, and user activity by hashtag. Hashtags, which are topical words or phrases preceded by a hash sign (#), can be added to posts to make them more easily searchable and can be "followed" to generate related updates from Instagram. Meta retains records of a user's search history and followed hashtags.

35.     Meta collects and retains location information relating to the use of an Instagram account, including user-entered location tags and location information used by Meta to personalize and target advertisements.

36.     Meta uses information it gathers from its platforms and other sources about the demographics, interests, actions, and connections of its users to select and personalize ads, offers, and other sponsored content. Meta maintains related records for Instagram users, including information about their perceived ad topic preferences, interactions with ads, and advertising identifiers. This data can provide insights into a user's identity and activities, and it can also reveal potential sources of additional evidence.

13

37.     In some cases, Instagram users may communicate directly with Meta about issues relating to their accounts, such as technical problems, billing inquiries, or complaints from other users.  Social networking providers like Meta typically retain records about such communications, including records of contacts between the user and the provider's support services, as well as records of any actions taken by the provider or user as a result of the communications.

38.     For each Instagram user, Meta collects and retains the content and other records described above, sometimes even after it is changed by the user (including usernames, phone numbers, email addresses, full names, privacy settings, email addresses, and profile bios and links).

39.     In my training and experience, evidence of who was using Instagram and from where, and evidence related to criminal activity of the kind described above, may be found in the files and records described above.  This evidence may establish the "who, what, why, when, where, and how" of the criminal conduct under investigation, thus enabling the United States to establish and prove each element or, alternatively, to exclude the innocent from further suspicion.

40.     For example, the stored communications and files connected to an Instagram account may provide direct evidence of the offenses under investigation.  Based on my training and experience, [[instant messages, voice messages, photos, videos, and documents]] are often created and used in furtherance of criminal activity, including to communicate and facilitate the offenses under investigation.

41.     I believe the information and media stored electronically on the Instagram account "dazed_ghxst" may reveal the account subscriber's identity and or involvement in the

14

shooting incident on August 7, 2023.  In addition, the user's account activity, logs, stored electronic communications, and other data retained by Meta can indicate who has used or controlled the account.  This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence.  For example, subscriber information, messaging logs, photos, and videos (and the data associated with the foregoing, such as date and time) may be evidence of who used or controlled the account at a relevant time.  As an example, because every device has unique hardware and software identifiers, and because every device that connects to the Internet must use an IP address, IP address and device identifier information can help to identify which computers or other devices were used to access the account.  Such information also allows investigators to understand the geographic and chronological context of access, use, and events relating to the crime under investigation.

42.     Account activity may also provide relevant insight into the account owner's state of mind as it relates to the offenses under investigation.  For example, information on the account may indicate the owner's motive and intent to commit a crime (e.g., information indicating a plan to commit a crime), or consciousness of guilt (e.g., deleting account information in an effort to conceal evidence from law enforcement).

43.     Other information connected to the use of Instagram may lead to the discovery of additional evidence.  For example, associated and linked accounts, stored communications, photos, and videos may reveal services used in furtherance of the crimes under investigation or services used to communicate with co-conspirators.  In addition, stored communications, contact lists, photos, and videos can lead to the identification of co-conspirators and instrumentalities of the crimes under investigation.

15

44.     Therefore, Meta's servers are likely to contain stored electronic communications and information concerning subscribers and their use of Instagram.  In my training and experience, such information may constitute evidence of the crimes under investigation including information that can be used to identify the account's user or users.

### CONCLUSION

45.     Based on the forgoing, I request that the Court issue the proposed search warrant.

46.     Pursuant to 18 U.S.C. § 2703(g), the presence of a law enforcement officer is not required for the service or execution of this warrant.  The government will execute this warrant by serving the warrant on Meta.  Because the warrant will be served on Meta, who will then compile the requested records at a time convenient to it, reasonable cause exists to permit the execution of the requested warrant at any time in the day or night.

47.     Assistant United States Attorney Alexander Flores has reviewed and approved this application.

Respectfully submitted,

Lorraine Hardy
Special Agent
Federal Bureau of Investigation

Electronically subscribed and telephonically sworn to before me on

September 20th _____ 2023____

HONORABLE B. Paul Briones
United States Magistrate Judge

16

## ATTACHMENT A

### Property to Be Searched

This warrant applies to information associated with Instagram account "dazed_ghxst" that is stored at premises owned, maintained, controlled, or operated by Meta Platforms, Inc., a company headquartered in Menlo Park, California.

Instagram shall disclose responsive data, if any, by sending to Special Agent Rainy Hardy, 215 West Elm Street, Farmington, New Mexico, 87401 using the US Postal Service or another courier service or electronic communication via lhardy@fbi.gov.

**ATTACHMENT B**

**Particular Things to be Seized**

**I.     Information to be disclosed by Meta Platforms, Inc. ("Meta")**

To the extent that the information described in Attachment A is within the possession, custody, or control of Meta, regardless of whether such information is located within or outside of the United States, and including any messages, records, files, logs, or other information that has been deleted but is still available to Meta, or has been preserved pursuant to a request made under 18 U.S.C. § 2703(f)., Meta is required to disclose the following information to the government for each account or identifier listed in Attachment A from August 3, 2023 to August 10, 2023:

A.     All business records and subscriber information, in any form kept, pertaining to the account, including:

1.     Identity and contact information (past and current), including full name, e-mail addresses, physical address, date of birth, phone numbers, gender, hometown, occupation, websites, and other personal identifiers;

2.     All Instagram usernames (past and current) and the date and time each username was active, all associated Instagram and Facebook accounts (including those linked by machine cookie), and all records or other information about connections with Facebook, third-party websites, and mobile apps (whether active, expired, or removed);

3.     Length of service (including start date), types of services utilized, purchases, and means and sources of payment (including any credit card or bank account number) and billing records;

4.     Devices used to login to or access the account, including all device identifiers, attributes, user agent strings, and information about networks and connections, cookies, operating systems, and apps and web browsers;

5.     All advertising information, including advertising IDs, ad activity, and ad topic preferences;

6.     Internet Protocol ("IP") addresses used to create, login, and use the account, including associated dates, times, and port numbers;

7.     Privacy and account settings, including change history; and

8.    Communications between Meta and any person regarding the account, including contacts with support services and records of actions taken;

B.    All content (whether created, uploaded, or shared by or with the account), records, and other information relating to videos (including live videos and videos on IGTV), images, stories and archived stories, past and current bios and profiles, posts and archived posts, captions, tags, nametags, comments, mentions, likes, follows, followed hashtags, shares, invitations, and all associated logs and metadata, from August 3, 2023 to August 10, 2023:

C.    All content, records, and other information relating to communications sent from or received by the account from August 3, 2023 to August 10, 2023, including but not limited to:

1.    The content of all communications sent from or received by the account, including direct and group messages, and all associated multimedia and metadata, including deleted and draft content if available;

2.    All records and other information about direct, group, and disappearing messages sent from or received by the account, including dates and times, methods, sources and destinations (including usernames and account numbers), and status (such as delivered, opened, replayed, screenshot);

3.    All records and other information about group conversations and video chats, including dates and times, durations, invitations, and participants (including usernames, account numbers, and date and time of entry and exit); and

4.    All associated logs and metadata;

D.    All content, records, and other information relating to all other interactions between the account and other Instagram users from August 3, 2023 to August 10, 2023, including but not limited to:

1.    Interactions by other Instagram users with the account or its content, including posts, comments, likes, tags, follows (including unfollows, approved and denied follow requests, and blocks and unblocks), shares, invitations, and mentions;

2.    All users the account has followed (including the close friends list), unfollowed, blocked, unblocked, muted, restricted, or denied a request to follow, and of users who have followed, unfollowed, blocked, unblocked, muted, restricted, or denied a request to follow the account;

3.    All contacts and related sync information; and

4.    All associated logs and metadata;

2

E.    All records of searches performed by the account from August 3, 2023 to August 10, 2023:and

F.    All location information, including location history, login activity, information geotags, and related metadata from August 3, 2023 to August 10, 2023:

Meta is hereby ordered to disclose the above information to the government within **14 DAYS** of issuance of this warrant.

3

**II.     Information to be seized by the government**

All information described above in Section I that constitutes fruits, contraband, evidence, and instrumentalities of violations of 18 U.S.C. §§ 1153 and 1111, first degree murder in Indian County, violations involving PUERTO, BEGAYE, and other persons known and unknown, including, for each account or identifier listed on Attachment A, information pertaining to the following matters:

   A.    Communications made by Instagram account "dazed_ghxst" from August 3, 2023, to August 10, 2023, involving the murder of JOHN DOE, including but not limited to associated logistics, planning, execution, and follow-up.

   B.    Evidence indicating how and when the account was accessed or used, to determine the geographic and chronological context of account access, use, and events relating to the crime under investigation and to the account owner;

   C.    Evidence indicating the account owner's state of mind as it relates to the crime under investigation;

   D.    The identity of the person(s) who created or used the account, including records that help reveal the whereabouts of such person(s).

   E.    The identity of the person(s) who communicated with the account holder about matters relating to the murder of JOHN DOE, including records that help reveal their whereabouts.

This warrant authorizes a review of electronically stored information, communications, other records and information disclosed pursuant to this warrant in order to locate evidence, fruits, and instrumentalities described in this warrant.  The review of this electronic data may be conducted by any government personnel assisting in the investigation, who may include, in addition to law

4

enforcement officers and agents, attorneys for the government, attorney support staff, and technical experts.  Pursuant to this warrant, the FBI may deliver a complete copy of the disclosed electronic data to the custody and control of attorneys for the government and their support staff for their independent review.

### CERTIFICATE OF AUTHENTICITY OF DOMESTIC RECORDS PURSUANT TO FEDERAL RULES OF EVIDENCE 902(11) AND 902(13)

I, _____, attest, under penalties of perjury by the laws of the United States of America pursuant to 28 U.S.C. § 1746, that the information contained in this certification is true and correct. I am employed by Meta Platforms, Inc. ("Meta"), and my title is _____. I am qualified to authenticate the records attached hereto because I am familiar with how the records were created, managed, stored, and retrieved. I state that the records attached hereto are true duplicates of the original records in the custody of Meta. The attached records consist of _____ [**GENERALLY DESCRIBE RECORDS (pages/CDs/megabytes)**]. I further state that:

a.      all records attached to this certificate were made at or near the time of the occurrence of the matter set forth by, or from information transmitted by, a person with knowledge of those matters, they were kept in the ordinary course of the regularly conducted business activity of Meta, and they were made by Meta as a regular practice; and

b.      such records were generated by Meta's electronic process or system that produces an accurate result, to wit:

1.      the records were copied from electronic device(s), storage medium(s), or file(s) in the custody of Meta in a manner to ensure that they are true duplicates of the original records; and

2.      the process or system is regularly verified by Meta, and at all times pertinent to the records certified here the process and system functioned properly and normally.

I further state that this certification is intended to satisfy Rules 902(11) and 902(13) of the Federal Rules of Evidence.

_____     _____
Date                                Signature